IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Sylvia S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50469 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. The parties have filed cross motions for summary judgment [19], [22]. For the reasons set forth below, Plaintiff's motion for summary judgment [19] is denied and the Commissioner's motion for summary judgment [22] is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

**A. Procedural History**

On August 16, 2018, Plaintiff filed for disability insurance benefits. R. 16. The Social Security Administration ("Commissioner") initially denied her application on November 13, 2018, and upon reconsideration on May 8, 2019. *Id*. Plaintiff filed a written request for a hearing on May 22, 2019. *Id*. On June 16, 2020, a hearing was held by Administrative Law Judge ("ALJ") Lovert F. Bassett where Plaintiff appeared and testified. *Id*. Plaintiff was represented by counsel. *Id*. Caroline Ward-Kniaz, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On June 26, 2020, the ALJ issued his written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 16-26. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-4. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Now before the Court are Plaintiff's motion for summary judgment [19], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22], and Plaintiff's reply brief [23].

---

[1] Martin O'Malley has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

### B. The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of July 31, 2014. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: spinal arthralgia, mood and anxiety disorders and post-traumatic stress disorder (PTSD). *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 19.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: no climbing ladders, ropes or scaffolds; frequently climb stairs, ramps, balance, stoop, crouch, kneel and crawl; no exposure to unprotected heights or dangerous moving machinery; can understand, remember and carry out simple job instructions in a routine work setting with few if any changes; can tolerate occasional interaction with co-workers, supervisors and the public, but should not participate in any collaborative joint projects with them; must not have a fast-paced job with mandatory numerically strict hourly production quotas, but is able to meet end-of-day employer expectations. R. 21. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. R. 23. Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail clerk (DOT# 209.687-026), inspector/hand packager (DOT# 559.687-074), and sorter (DOT# 573.687-034). R. 24. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from July 31, 2014, through the date last insured, December 31, 2019. R. 25.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The

court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff contests the ALJ's credibility finding and mental RFC limitations.[2] [19]. P. 7, 11. Each argument will be taken in turn.

### A. ALJ's Credibility Finding

Under SSR 16-3P, in evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, an ALJ is instructed to consider various factors, including a Plaintiff's daily activities and medication use, an evaluation often described as the "credibility finding." SSR 16-3P (Mar. 28, 2016); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). An ALJ's credibility finding is given "special deference" and will be overturned only if it is "patently wrong," meaning that it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)) (internal quotations omitted); *Elder*, 529 F.3d at 414. The ALJ's credibility determination here was explained and supported, and thus was not patently wrong.

The ALJ explained that Plaintiff's statements about the "[i]ntensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical and other evidence of record" such that the "[e]vidence contradicts the severity of limitations alleged by the claimant."

---

[2] Plaintiff also raises an underdeveloped argument that the ALJ's "[o]bvious negative outlook toward Plaintiff's counsel… likely colored his decision-making." [19], p. 7. Plaintiff references the ALJ's characterization of Plaintiff's counsel's questioning at the hearing as "leading," as well as the ALJ's statements criticizing counsel's objections to the vocational expert and other "standard form objections." *Id*., citing R. 16, 21, 25. Plaintiff cites no caselaw to support her contention that the ALJ's opinion about Plaintiff's counsel influenced his decision-making. A showing of ALJ bias requires a demonstration of "[e]xtreme conduct of deep-seated and unequivocal antagonism." *Henderson v. Kijakazi*, No. 22 C 3890, 2023 WL 6388143, at *10 (N.D. Ill. Sept. 29, 2023). Courts have found that this standard for "[d]etermining whether an ALJ's display of bias or hostility requires setting aside his findings and conclusions ... is an exacting one. Comments by a judge that do not amount to grounds for bias challenge are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within bounds of imperfect men and women." *Ferreira v. Astrue*, No. 08-C-0523, 2010 WL 3062644, at *5 (E.D. Wis. July 30, 2010) (internal quotations and citations omitted). Plaintiff does not argue that any of the ALJ's comments exceed the bounds of "imperfect men and women," and even if she did, it would be highly unlikely on the current record that the Court would find the level of "extreme conduct" necessary for the bias standard to be met here. As such, the Court need not consider this argument further.

R. 22. The ALJ supported this explanation with analysis of the Plaintiff's medical records and other records. *Id*. Specifically, the ALJ relied on the consistently conservative treatment and mild medical findings reflected in the record. *Id*. As to Plaintiff's conservative treatment, the ALJ pointed out that Plaintiff takes no prescription medications despite alleging "severe pain," and instead treats with over-the-counter medications such as Tylenol. R. 22. Plaintiff alleges that the ALJ erred in relying on Plaintiff's Tylenol use because Plaintiff testified that her doctor told her to stop using Tylenol due to liver problems. [9], p. 9 (citing R. 42 ("[Tylenol] helps, somehow, but I had to stop because one of the doctors… told me that I have some issues with my liver. So, they told me to stop taking the stuff, you know—try to stop taking medication.")). The record, however, does not document the visit at which this advice was allegedly given. Instead, the record reflects several medical visits where Plaintiff was directed to treat with Tylenol, and specifically documents an ER visit where Plaintiff reported to a physician that she "[u]sually just takes Tylenol but 2 days ago the doctor told her [she has] liver issues." R. 322, 341, 532, 1822; R. 444. Despite this report to the ER physician, upon discharge Plaintiff was nonetheless directed to take Tylenol as needed. R. 532. The record also documents other medical visits that demonstrate Plaintiff's continued Tylenol use after the ER visit, including additional explicit directives by physicians to treat with Tylenol. *See* R. 684 (medical visit for headaches where Plaintiff reported that she took Tylenol and her "symptoms improved"); R. 532 (medical visit for influenza where Plaintiff was directed to take Tylenol); R. 1822 (medical visit for strep where Plaintiff was directed to take Tylenol).

Accordingly, it is not clear from the record that Plaintiff's Tylenol use was precluded. The ALJ therefore appropriately relied on evidence of over-the-counter treatment, which Plaintiff described as helpful for her pain, as an inconsistency between Plaintiff's alleged symptoms and the medical evidence. R. 41-42 (Plaintiff testifying that she took over-the-counter Tylenol for pain in her back and knee, which was helpful); *see also Simpson v. Barnhart*, 91 F. App'x 503, 507 (7th Cir. 2004) ("The ALJ was free to infer that [Plaintiff's] pain was not severe because he was never prescribed pain medication and testified that he was able to control his pain symptoms by taking Tylenol."). Even if this reliance was in error, "not all of the ALJ's reasons must be valid as long as *enough* of them are," and here the ALJ presented other valid reasons that render the opinion supported by substantial evidence. *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009).

As to further evidence of Plaintiff's consistently mild medical findings, the ALJ pointed out that the record reflects only mild spinal disease findings and improvement with treatment. R. 22 (citing, *i.e.* R. 410 (physician's impression of "multilevel mild degenerative disc disease… no acute abnormality"); R. 425 ("minimal degenerative change of cervical spine"); R. 418 (finding that Plaintiff had full range of motion in her back and no radicular findings on her exam despite being "exquisitely tender throughout entire lumbar spine"); R. 1858 (stating that Plaintiff's spinal issues "[w]ill respond favorably with Chiropractic treatment for these issues")). Furthermore, the ALJ explained that no objective medical evidence documents the problems using her hands that Plaintiff testified to during the hearing, which Plaintiff herself admits. R. 22; [19], p. 10 ("Plaintiff does have difficulty using her hands, even if objective testing has been unremarkable."). Moreover, Plaintiff's allegations of dizziness were not corroborated by a head CT scan. R. 22 (citing R. 427). Given these routinely mild medical findings, the ALJ appropriately inferred that the severity of the physical limitations alleged by Plaintiff were not entirely consistent with the medical evidence

4

of record. *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) ("Discrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Finally, the ALJ also found that Plaintiff's ability to pay bills, count change, and handle banking was inconsistent with her allegations of debilitating mental impairments. R. 22. Plaintiff presents a limited challenge to this argument, asserting that Plaintiff's ability to pay bills "is not probative as to the relevant issue of whether an individual can perform work-related activities on a full-time basis." [19], p. 10. But the ALJ did not rely solely on Plaintiff's ability to pay bills, count change, and handle banking in finding her allegations of debilitating mental impairments inconsistent with the record; the ALJ also looked to the opinion of the consulting psychiatrist in supporting his opinion. The ALJ relied on the opinion of consulting psychiatrist Dr. Heinrichs, who found some limitations that "[m]ay interfere with her ability to engage in some work-related activities without close supervision," but ultimately concluded that Plaintiff would nonetheless "[l]ikely be able to adjust to the changing expectations of many work settings." R. 22 (citing R. 422). Further, the ALJ pointed out Dr. Heinrich's findings that Plaintiff's levels of understanding, persistence, and sustained concentration were normal, and that her social interaction was appropriate. *Id*. The ALJ explained that this evidence was inconsistent with Plaintiff's allegations of debilitating mental impairments which would preclude work. An "ALJ [is] entitled to draw inferences from evidence of… inconsistencies between Plaintiff's description of his symptoms and the overall record and treatment." *Michael A. v. Kijakazi*, No. 20-CV-4585, 2023 WL 6311535, at *8 (N.D. Ill. Sept. 28, 2023). The ALJ here did just that, inferring that Dr. Heinrich's findings, in addition to Plaintiff's ability to handle financial responsibilities, indicated an inconsistency between Plaintiff's allegations of debilitating mental symptomology and the record.

Ultimately, "[a]n ALJ need only assert a single valid reason to support his credibility assessment," and the ALJ here clearly did so through his analysis of the conservative treatment and generally mild objective medical findings in the record. *Dwayne D. v. Kijakazi*, No. 21 CV 149, 2023 WL 6976897, at *3 (N.D. Ill. Oct. 23, 2023). Accordingly, the ALJ's credibility assessment, which was explained and supported by Plaintiff's consistently conservative treatment and generally normal objective medical findings, was not patently wrong.

B. **ALJ's Mental RFC Limitations**

Plaintiff argues that the "ALJ failed to account for the effects of Plaintiff's combined [mental] impairments on her ability to sustain the on-task requirements of full work." [19], p. 11. Specifically, Plaintiff argues that the ALJ failed to support his mental RFC findings because Plaintiff's testimony as to her mental impairments, and medical documentation of Plaintiff's depression, anxiety, and general poor mood, render Plaintiff incapable of sustaining work that fulfills the RFC.[3] [19], P. 13-15. The Court sees "no error in the ALJ's assessment; [he] considered

---

[3] Although Plaintiff argues that she would be unable to sustain work because of her inability to be around others, she can point to no medical evidence in the record to confirm this self-reported symptom. *Jozefyk*, 923 F.3d at 497 (finding no error in the ALJ's RFC assessment where Plaintiff can provide no medical confirmation of self-reported symptoms). Nevertheless, the ALJ attempted to accommodate Plaintiff's self-reported issues in being around others by limiting Plaintiff to "occasional interaction with co-workers, supervisors and the public" without "participat[ing] in any collaborative joint projects with them". R. 21. An ALJ is not required to discuss a limitation "where no medical opinion in the record supported it," and Plaintiff points to no medical opinion in the record that articulated an isolation limitation. *Edward H. v. Kijakazi*, No. 20-CV-3847, 2023 WL 2683171, at *9–10 (N.D. Ill. Mar. 29, 2023). The ALJ

5

all limitations supported by record evidence." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019).

The ALJ acknowledged that Plaintiff does have documented mental impairments—depression and anxiety—that cause difficulty with concentration. R. 22. Moreover, the ALJ reviewed Plaintiff's allegations of "[a]nger toward her husband, low self-esteem and fears of things she cannot control… anger when driving… [and] PTSD symptoms." R. 22. After acknowledging those subjective symptom reports, the ALJ relied on the consulting psychiatrist's assessment, as well as the normal emergency room examinations, in determining that those mental impairments could be properly accounted for in the limits to concentration, persistence, and pace provided in the RFC. R. 22. As explained in the previous section, the consulting psychiatrist ultimately found that Plaintiff's levels of understanding, persistence, and sustained concentration were normal, and that her social interaction was appropriate. *Id* (citing R. 422). The ALJ also considered Plaintiff's two ER visits for anxiety, during which Plaintiff's symptoms resolved by the time she was seen by a physician and otherwise normal neurological exam findings were made. R. 22 (citing R. 328, R. 438). In other words, the ALJ considered the objective medical evidence which corroborated some of Plaintiff's self-reported symptomology and correspondingly provided limitations in concentration, persistence, and pace that he believed accounted for the degree of symptomology that had been substantiated. The ALJ therefore supported his mental RFC limitations with substantial evidence, creating a logical bridge from the generally normal concentration, persistence, and pace findings evinced by the medical record to the RFC limitations he crafted.

"Finally, even if the ALJ's RFC assessment were flawed, any error was harmless. It is unclear what kinds of work restrictions might address [Plaintiff's] purported limitations in concentration, persistence, or pace because [she] hypothesizes none." *Jozefyk* 923 F.3d at 498. Plaintiff simply repeats her uncorroborated, self-reported symptomology and asserts that it should preclude all work without explaining why. [19], p. 13-15. Plaintiff does point to objective medical findings which report a depressed, anxious, and irritable mood as evidence of mental impairments, but she does not explain why those impairments should override the contemporaneous findings of intact memory and intellect, good insight and judgment, normal abstraction, and an ability to concentrate. R. 1108. Accordingly, because "[Plaintiff] cites no evidence that those deficits keep [her] from performing simple, routine, and repetitive tasks," any error in the ALJ's RFC limitations was harmless. *Jozefyk* 923 F.3d at 498.

---

therefore went above and beyond what was required of him by crafting a limitation for Plaintiff's alleged social issues notwithstanding the lack of corroborating medical evidence, and the Court can find no error with this limitation.

## CONCLUSION

      For the reasons stated above, Plaintiff's motion for summary judgment [19] is denied and the Commissioner's motion for summary judgment [22], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 05/09/2024                  ENTER:

_Margaret J. Schneider_
United States Magistrate Judge